IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-619

Filed 5 March 2025

Catawba County, No. 23 JA 33

IN THE MATTER OF: C.A.D., A MINOR CHILD.

Appeal by respondent-mother from order entered 12 April 2024 by Judge Scott D. Conrad in Catawba County District Court. Heard in the Court of Appeals 11 February 2025.

> *Maranda W. Stevens for petitioner-appellee Catawba County Department of Social Services.*

> *Administrative Office of the Courts, by NC GAL Appellate Counsel Matthew D. Wunsche, for guardian ad litem.*

> *Peter Wood for respondent-appellant mother.*

ZACHARY, Judge.

Respondent-Mother appeals from the trial court's order[1] terminating her parental rights to her minor child, "Charlie."[2] After careful review, we affirm.

## I.    Background

---

[1] The file numbers on the documents in the appellate record vary; in some documents, the file number is 23 JA 33 and in other documents, the file number is 23 JT 33. Because the order from which Respondent-Mother appeals uses file number 23 JA 33, we will use this file number as well.

[2] We use the pseudonym to which the parties stipulated for ease of reading and to protect the juvenile's identity. In addition, we note that Respondent-Father has not appealed from the trial court's order, which also terminated his parental rights to Charlie. Accordingly, he is not a party to this appeal.

Charlie was born in November 2019. On 26 February 2023, the Catawba County Department of Social Services ("DSS") assumed temporary emergency custody of Charlie. The next day, DSS filed a juvenile petition alleging Charlie to be neglected and dependent.

As set forth in the petition, Respondent-Mother and Charlie presented at Catawba Valley Medical Center Emergency Department on 26 February 2023 when Respondent-Mother was experiencing suicidal ideations. Respondent-Mother "had a bizarre affect, was hallucinating, heard someone calling her name, heard phantom crying, and was falling asleep during conversations." She completed a 5-panel drug screen and tested positive for amphetamines and marijuana. Charlie had two burn marks on his left hand—injuries Respondent-Mother reported Charlie incurred from "grabbing a burning stick next to a hot burn barrel." Respondent-Mother then attempted to flee the hospital but was detained. As a social worker tried to gather information, Respondent-Mother "did not communicate coherently and appeared to doze off at times."

In its juvenile petition, DSS also detailed Respondent-Mother's history of drug use and manufacturing, which had led to her first child's adjudication as neglected and dependent, and eventually, the termination of Respondent-Mother's parental rights to the child.

On 27 February 2023, the trial court entered an order placing Charlie in the custody of DSS. In March 2023, the court appointed a guardian ad litem to represent Charlie.

The juvenile petition came on for an adjudication and disposition hearing in Catawba County District Court on 24 April 2023. The trial court entered an adjudication and disposition order on 22 May 2023, in which it adjudicated Charlie to be a neglected and dependent juvenile and determined that maintaining Charlie's placement with DSS was in Charlie's best interests. The court ordered that Respondent-Mother enter into and comply with a case plan that required her to:

> a. Complete a psychological evaluation and parenting capacity evaluation and cooperate with all recommended mental health services;
>
> b. Complete a substance abuse assessment and cooperate with all recommended services;
>
> c. Sign a release of information to DSS and any other treatment providers of any substance abuse assessments and/or treatment;
>
> d. Complete drug screen[s] when requested by DSS;
>
> e. Obtain and maintain employment, and provide proof of employment;
>
> f. Obtain and maintain stable housing appropriate for [Charlie]; and
>
> g. Demonstrate a consistent and improved capability to care for [Charlie] safely, and to protect [Charlie] from others who are unsafe (using drugs, criminal activity, etc.)[.]

This matter came on before the trial court for permanency planning hearings on 17 July 2023 and 9 October 2023. On 12 December 2023, DSS filed a motion in the cause seeking to terminate parental rights to Charlie. DSS alleged that Respondent-Mother's parental rights should be terminated on the grounds of (1) neglect; (2) willful failure to pay a reasonable portion of the cost of Charlie's care; (3) dependency; and (4) Respondent-Mother's inability or unwillingness to establish a safe home for Charlie following the termination of her parental rights to another one of her children. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (3), (6), (9) (2023).

The motion for termination of parental rights came on for hearing on 12 March 2024. At that hearing, Respondent-Mother was not present. Her counsel made a motion to continue based on her absence which DSS opposed. The trial court denied the motion. On 12 April 2024, the court entered a "Consolidated Judgment and Order" terminating both parents' rights to Charlie. The court concluded, *inter alia*, that grounds for terminating Respondent-Mother's parental rights existed under N.C. Gen. Stat. § 7B-1111(a)(1), (6), (7), and (9). Respondent-Mother filed timely notice of appeal.

## II.    Discussion

On appeal, Respondent-Mother argues that "[t]he trial court abused its discretion when it failed to conduct the proper balancing test before denying the

motion to continue the termination hearing when [she] had not appeared in court." We disagree.

### A. Standard of Review

"Because counsel did not assert a constitutional basis for the requested continuance, we review denial of the motion to continue for abuse of discretion." *In re L.A.J.*, 381 N.C. 147, 149, 871 S.E.2d 697, 699 (2022). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation omitted). "Moreover, regardless of whether the motion raises a constitutional issue or not, a denial of a motion to continue is only grounds for a new trial when [a respondent] shows both that the denial was erroneous, and that he suffered prejudice as a result of the error." *In re J.E.*, 377 N.C. 285, 291, 856 S.E.2d 818, 822 (2021) (cleaned up).

### B. Analysis

"In reviewing for an abuse of discretion, we are guided by the Juvenile Code, which provides that continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice." *Id.* at 291, 856 S.E.2d at 822–23 (cleaned up); *see also* N.C. Gen. Stat. § 7B-1109(d). "Furthermore, continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *J.E.*, 377 N.C. at 291, 856 S.E.2d at 823 (cleaned up).

At the commencement of the termination hearing, Respondent-Mother was not present. Her counsel made a motion to continue:

> [COUNSEL]: . . . [Respondent-Mother] is not present. I did speak with her on multiple occasions, but most recently late last week to remind her that she does have a court date this morning, 9:00 a.m. I asked her to be here because she was wanting to contest this action.
>
> Typically, when she is late for court, she will contact my office to have them give me some information about what her arrival time is. She has not contacted my office this morning to advise that she's going to be late . . . . But I would make a motion to continue the matter given the fact that she's not here, or at least hold it open until she can be here. . . .

The trial court heard from counsel for DSS and then denied the motion to continue:

> THE COURT: . . . [T]here was a notice of hearing for pretrial and for the termination of parental rights filed in this matter.
>
> On January the 8th, 2024, the pretrial was had on January the 29th setting the court date, and . . . that court date was set for today . . . .
>
> [Respondent-Mother] was at that pretrial conference. That order set the court date for March the 12th at nine o'clock in the morning, which is today. It's now 9:25. [Respondent-Mother] is not here. Since she has been in contact with you, it's obvious that she was aware of the court date today, and nobody ha[s] heard any reason why she's not here at nine o'clock, or here today at all at this point. I'm going to deny your motion to continue.

Respondent-Mother never appeared in court that day. Now, on appeal, she contends that "[t]he need for [her] continuance outweighed any need to hold the

hearing immediately." Particularly, she states that "[s]ince [DSS] did not allege any harm from granting the continuance, the interests of the party opposing the continuance did not weigh against a continuance." However, Respondent-Mother has mischaracterized the applicable standard for the trial court's consideration of her motion to continue.

In the instant case, if the trial court had granted the motion to continue—because the termination petition was filed on 12 December 2023 and the termination hearing was held on 12 March 2024—this matter would have been continued beyond the 90-day deadline provided in the Juvenile Code. *See* N.C. Gen. Stat. § 7B-1109(d). It is well settled that "continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice." *J.E.*, 377 N.C. at 291, 856 S.E.2d at 822–23 (cleaned up); *see also* N.C. Gen. Stat. § 7B-1109(d). Thus, DSS was not required to forecast any harm that might arise were the trial court to grant the continuance. Rather, Respondent-Mother was required to show the existence of "extraordinary circumstances" together with the necessity of the continuance to ensure "the proper administration of justice." *J.E.*, 377 N.C. at 291, 856 S.E.2d at 823 (citation omitted). This, she did not do. Instead, counsel simply "ma[d]e a motion to continue the matter given the fact that [Respondent-Mother was] not here."

Further, to the extent that Respondent-Mother claims that her constitutional rights were violated, we note that Respondent-Mother was represented by counsel

and no due-process argument was raised. "There [wa]s no mention of the need to continue due to a lack of notice or in order to ensure due process." *Id.* at 290, 856 S.E.2d at 822. A review of the transcript shows that the only basis for the motion to continue was Respondent-Mother's absence. Constitutional "arguments not raised at a termination hearing may not be raised for the first time on appeal." *In re A.L.L.*, 254 N.C. App. 252, 264 n.7, 802 S.E.2d 598, 607 n.7 (2017). Thus, Respondent-Mother "has waived any argument that the denial of the motion to continue violated [her] constitutional rights." *J.E.*, 377 N.C. at 290–91, 856 S.E.2d at 822.

Indeed, the facts before us are quite similar to those presented to our Supreme Court in *J.E.* There, the respondent-father failed to appear at the termination hearing, with which the trial court proceeded after denying counsel's motion to continue. *Id.* at 289–90, 856 S.E.2d at 822. The respondent-father offered no explanation for his absence either before the trial court or on appeal. *Id.* at 290, 856 S.E.2d at 822. Our Supreme Court reviewed the denial of the respondent-father's motion to continue and was "satisfied the trial court did not abuse its discretion in determining [the] respondent[-father]'s unexplained absence did not amount to an extraordinary circumstance, as required by [N.C. Gen. Stat.] § 7B-1109(d), to merit continuing the termination hearing further beyond the 90-day timeframe set forth in the Juvenile Code." *Id.* at 291–92, 856 S.E.2d at 823.

"Continuances are not favored, and motions to continue ought not to be granted unless the reasons therefor are fully established." *L.A.J.*, 381 N.C. at 151, 871 S.E.2d

at 700 (cleaned up). As DSS notes in its brief, "[t]his motion to continue was solely based on [Respondent-Mother]'s failure to appear. . . . There was no indication of any other reason for the continuance." Therefore, "[h]aving offered no legitimate reason for being unable to attend the hearing, [R]espondent-[M]other failed to establish extraordinary circumstances requiring another continuance far beyond the ninety-day deadline." *Id.*

Respondent-Mother has failed to argue, let alone establish, the existence of any "extraordinary circumstances" or the necessity of a continuance in order to secure "the proper administration of justice." *J.E.*, 377 N.C. at 291, 856 S.E.2d at 823 (citation omitted); *see also* N.C. Gen. Stat. § 7B-1109(d). Further, in light of Respondent-Mother's "counsel's advocacy on behalf of [Respondent-Mother] at the termination hearing and the unchallenged findings of fact supporting the termination of h[er] parental rights . . . , we believe it is unlikely that the result of the termination proceedings would have been different had the hearing been continued." *J.E.*, 377 N.C. at 292, 856 S.E.2d at 823. As such, the trial court did not abuse its discretion in denying counsel's motion to continue.

### III. Conclusion

Accordingly, we affirm the trial court's order terminating Respondent-Mother's parental rights.

AFFIRMED.

Judges CARPENTER and MURRY concur.